**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **KRISHNAN R THONDUKOLAM, ET AL.,** <br> Plaintiffs, <br> vs. <br> **CORTEVA, INC., ET AL.,** <br> Defendants. | CASE NO. 19-cv-03857-YGR <br><br> **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** <br> Re: Dkt. No. 48 |

Plaintiffs Krishnan R. Thondukolam, Stephen W. Records, William C. Mallonee, and David L. Everett bring this putative class action arising out of the merger and restructuring of defendants E. I. du Pont de Nemours and Company ("Historical DuPont") and The Dow Chemical Company ("Historical Dow"). Plaintiffs bring seven causes of action for, among other things, breach of fiduciary duty, failure to follow pension plan documents, failure to notify pension plan participants regarding changes to their plan, and failure to properly fund the pension plan.

Having carefully considered the papers submitted, the arguments of the parties at the hearing, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** defendants' motion to dismiss **WITH LEAVE TO AMEND**.

**I.     BACKGROUND**

On December 11, 2015, Historical DuPont and Historical Dow announced a plan to merge and restructure their businesses. Under the terms of the restructuring, the two entities were to merge temporarily under a single entity, DowDuPont, Inc. ("DowDuPont"), and then separate out their product lines into three independent companies. The result was three agriculture, materials science, and specialty products companies: Corteva, Inc. ("Corteva"), Dow Inc. ("New Dow") and DuPont de Nemours, Inc., ("New DuPont"), respectively. Historical DuPont emerged from the spin-offs as a subsidiary of Corteva. Plaintiffs allege that after the restructuring, most of the previously existing assets and business lines remain with New DuPont or New Dow.[1]

---

[1] The FAC names six historical and newly created Dow, DuPont, and Corteva corporate entities as defendants. It also names thirty individuals: the directors of Historical DuPont and

Plaintiffs are participants the U.S. DuPont Pension and Retirement Plan (the "Plan"), which provides benefits to retirees of Historical DuPont. Historical DuPont adopted the Plan in 1904 and remains the Plan sponsor. In the first amended complaint ("FAC"), plaintiffs allege that defendants eviscerated Historical DuPont's business operations and made it a subsidiary of Corteva, an under-capitalized and over-burdened spin-off, so as to relieve DuPont and Dow of any obligations with respect to the Plan. Plaintiffs further allege that defendants engaged in these corporate transactions without proper disclosures to Plan participants.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.,* 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## III. DISCUSSION

### A. Fiduciary Claims

#### I. *Count I (Breach of Fiduciary Duty, 29 U.S.C. § 1104)*

In Count I, plaintiffs allege that defendants breached their fiduciary duties by "orchestrating and consummating the merger and spinoff" so as to burden Corteva, through Historical DuPont, with future funding of the Plan. Defendants contend that this claim should be

---

Historical Dow at the time of the merger, the directors of DowDuPont at the time of the spin-offs of Corteva and New Dow, and four human resources and finance executives from DowDuPont and Historical DuPont. In addition, plaintiffs name the boards of DowDuPont, Historical DuPont and Historical Dow as defendants.

dismissed because it arises out of quintessentially business decisions related to the corporate restructuring, which are beyond the scope of ERISA's fiduciary standards.

The Ninth Circuit has held that the "decision to spin a [pension] plan off . . . is not a fiduciary act." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1076 (9th Cir. 2009) (citing cases).[2] Thus, insofar as plaintiffs' claim arises out of defendants' decisions regarding corporate restructuring, the claim fails.

The Ninth Circuit thus far has left open the question of whether implementation of a spin-off is a fiduciary act. *See id.* (in analyzing fiduciary duty, distinguishing between decision to and implementation of spin off); *see also Waller v. Blue Cross of Cal.,* 32 F.3d 1337, 1342 (9th Cir. 1994) (stating that decision to terminate a plan, as opposed to implementing that decision, is not a fiduciary act). Here, however, plaintiffs have not alleged sufficient facts to state a plausible claim based on this theory. Despite arguing that they do not take issue with the merger and spin-offs per se, plaintiffs bring this action challenging changes made to Historical DuPont's operations and controlled group *as part of* the restructuring. Such changes do not implicate fiduciary duties. Further, plaintiffs' allegations are conclusory and speculative regarding whether Historical DuPont or Corteva—the post-spin-off entities responsible for fulfilling Plan obligations—will be able to do so. As such, plaintiffs' section 1104 claim fails.

### 2. Count V (Failure to Properly Fund the Plan and Breach of Fiduciary Duty, 29 U.S.C. § 1021)

In Count V, plaintiffs allege that by "choosing to only contribute the minimum amount required . . . the [d]efendants have created a Plan that is so underfunded that it is at an increased risk of failure." Defendants seek dismissal of Count V, arguing that decisions about funding the Plan are made by the plan settlor, not a plan fiduciary, and in any event, because the DuPont defendants have complied with and exceeded ERISA's funding requirements.

---

[2] *See also Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) ("[A] decision to spin-off [a] division along with its pension plan [i]s, at its core, a corporate business decision," so "general fiduciary duties under ERISA [are] not triggered."); *Blaw Knox Ret. Income Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185, 1187 (3d Cir. 1993) (by "selling the unprofitable BK Divisions and structuring the transaction to include the existing pension plans," defendants "were making a corporate business decision" and not acting as ERISA fiduciaries).

In *Glazing Health & Welfare Fund v. Lamek*, the Ninth Circuit affirmed the dismissal of breach of duty claims arising out of alleged failure to make required plan contributions because "[u]ntil the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation." 896 F.3d 908, 910 (9th Cir. 2018) (quoting *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000)); *see also Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 361, 367 (2d Cir. 2014) (where defendant used company stock to make required contribution, the "challenged conduct did not trigger fiduciary liability under ERISA" because funding is a "settlor" function). Here, certain portions of the FAC appear to challenge defendants' failure to fund the Plan, which under *Glazing Health*, does not trigger fiduciary obligations. Thus, insofar as plaintiffs' claim is based on inadequate funding, the claim is dismissed.

However, other portions of the FAC suggest plaintiffs' claim is based not on funding, but on the allocation of funds within the Plan. Plaintiffs allege that Historical DuPont made billions of dollars in contributions to the Plan, which actually were credited and claimed as tax deductions, after which "DowDuPont and the members of its board[] elected to apply [the] contributions, totaling nearly $4 billion, to the prefunding balance instead of to the general assets," "creat[ing] a source for the sponsor to meet future [Minimum Required Contribution] obligations . . . without having to actually contribute additional assets to the Plan." The FAC states that defendants' "decision regarding fund allocation was separate from the decision regarding the amount of money to contribute to fund the [P]lan and directly affected [P]lan assets." Viewing the allegations in the manner most favorable to plaintiffs, the claim appears at least in part to implicate fiduciary duties.

Plaintiffs' claim ultimately fails, however, because plaintiffs themselves concede that the DuPont defendants satisfied ERISA's minimum funding requirements. Plaintiffs cite no on-point authority for their contention that fiduciary obligations impose a higher funding requirement than that imposed by ERISA. Plaintiffs also do not explain what level of funding would be enough to satisfy defendants' fiduciary duties. Without a legal basis to find a breach of fiduciary duty where

4

1  statutory requirements have been met, plaintiffs' claim fails.³

                3.      *Individual and Dow Defendants*

Defendants argue that the fiduciary duty claims against the individual defendants (Counts I, III, IV, and V) and against the historical and spun off Dow entities (Counts I and IV) should be dismissed because the FAC does not sufficiently allege that these defendants acted as ERISA fiduciaries. As explained herein, the Court dismisses Counts I, III, IV, and V on various other grounds, and as such, need not consider further the claims as alleged against these specific defendants. Additionally, at the hearing on the motion, plaintiffs conceded that they did not allege sufficient facts to support the claims against the Dow defendants. As such, these claims are dismissed.

**B.    Count II (Failure to Follow Plan Documents, 29 U.S.C. § 1104)**

In Count II, plaintiffs allege that defendants violated Plan documents by eviscerating Historical DuPont's business activities and making it a subsidiary of Corteva, such that Historical DuPont will not be able to make required contributions to the Plan. Defendants contend that nothing in the Plan documents prevent a change to Historical DuPont's controlled group. Defendants further argue that the FAC cannot state a claim for violation of the Plan documents based on Historical DuPont's theoretical inability to pay because such a claim is not ripe.

As explained in Section III(A)(1), corporate restructuring decisions are not fiduciary in nature. Thus, defendants' decision to change Historical DuPont's controlled group does not trigger the fiduciary's obligation to follow Plan documents. Further, plaintiffs do not identify any portions of the Plan that were violated by defendants' implementation the spin-offs or management of the Plan.⁴ In sum, the FAC lacks sufficient facts to state a plausible claim.

---

³ *See Adams v. Anheuser-Busch Co., Inc.*, No. 2:10-CV-826, 2011 WL 1559793, at *10 (S.D. Ohio Apr. 25, 2011) (granting motion to dismiss a breach of fiduciary duty claim alleging failure to fund a plan where "the complaint contain[ed] no factual allegations that the defendants failed to make any contributions to the Plan required under either the terms of the Plan or ERISA"); *Cress v. Wilson*, No. 06 CIV. 2717 (JGK), 2008 WL 5397580, at *9 (S.D.N.Y. Dec. 29, 2008) ("[T]here is no freestanding fiduciary duty to fund a pension plan, outside the requirements ERISA imposes[.]").

⁴ Defendants cite *Systems Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1383 (D.C. Cir.

5

In addition, plaintiffs' claim that defendants violated Plan documents because Historical DuPont will be unable to make required contributions is speculative. As explained, plaintiffs concede that defendants have "technically contributed to the Plan" and satisfied ERISA's minimum funding requirements. Absent factual allegations to show at least a concrete likelihood that defendants' conduct has left them unable to fulfill their fiduciary obligations to fund the Plan, plaintiffs do not state a plausible claim.

**C. Count III (Breach of Disclosure Duty, 29 U.S.C. §§ 1021 and 1132) and Count IV (Breach of Disclosure Duty and Failure to Notify Plan Participants Regarding the Serious Consideration of Major Changes to the Plan, 29 U.S.C §§ 1021 and 1132)**

In Count III, plaintiffs allege that the Plan's disclosures failed to "sufficiently advise participants of the status of the Plan," and "properly inform Plan participants of the funding policy of Historical DuPont." Similarly, in Count IV, plaintiffs allege that defendants misled plaintiffs about the intent and effect of their strategy to merge, spin-off, and leave the Plan underfunded.

Insofar as plaintiffs' claims are predicated on defendants' assurances regarding the Plan's funding status or ability to fulfill future obligations, the claims fail because plaintiffs have not alleged facts showing that the Plan was underfunded. For example, based on the allegations in the FAC, the Court finds nothing misleading about defendants' representations in 2016 that they would "continue to fund the pension plan in accordance with all the legal requirements" although "no final decisions [had] been made as to the allocation of pension liabilities and related assets."

Plaintiffs also contend that defendants failed to disclose properly their funding policy, first stating that "contributions exceeding minimum funding requirements may be made at [Historical

---

1998) for the proposition that absent a provision prohibiting the transfer of Plan obligations, such a transfer does not violate Plan documents. However, *Systems Council* reached this conclusion in the breach of contract context. Thus, the Court is not persuaded that plaintiffs must identify specific Plan provisions expressly prohibiting the fiduciary's conduct in order to pursue a section 1104 claim. On the other hand, the Court is equally unpersuaded by plaintiffs' contention that absent a specific grant of authority to perform an act, a fiduciary's hands are tied. *See Cent. States, Se. & Sw. Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985) (stating that trustees are understood to have "such powers as are necessary or appropriate for the carrying out of the purposes of the trust"). At this juncture, the Court simply finds that plaintiffs must point to some portion of the Plan that defendants violated to proceed with their claim.

6

1   DuPont]'s discretion," and later stating that Historical DuPont "does not make contributions that
2   are in excess of tax deductible limits." The latter of these statements was made in a filing with the
3   Securities and Exchange Commission, however, which defendants argue imposes different
4   reporting requirements. In any event, the two statements are not inherently in conflict if Historical
5   DuPont has chosen not to exceed minimum funding requirements but retains discretion to change
6   its position on the issue. Thus, plaintiffs' allegations fail to state a plausible claim for failure to
7   disclose.

### D. Count VI (Prohibited Transaction in Violation of 29 U.S.C. § 1106(a))

Section 1106(a) prohibits fiduciaries from causing a pension plan to engage in transactions if the fiduciary "knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" In Count VI, plaintiffs allege that the transfer of Historical DuPont, which included the Plan and its assets, to a new controlled group within Corteva is a prohibited transaction under section 1106(a). Defendants argue the claim should be dismissed because the restructuring did not involve a transfer of the Plan or Plan assets. Rather, according to defendants, the FAC alleges that the business operations and assets of the Plan *sponsor* were transferred to new entities.

At bottom, plaintiffs' section 1106(a) claim as currently pleaded suffers from similar deficiencies as its other claims. That is, a threshold issue under section 1106(a) is whether fiduciary status exists, *Lockheed Corp. v. Spink,* 517 U.S. 882, 888-89, 116 S.Ct. 1783, 1789, 135 L.Ed.2d 153 (1996), and to the extent plaintiffs' claim is based on the corporate restructuring, plaintiffs' have not pleaded any fiduciary acts. Relatedly, the FAC does not plead facts showing that the Plan or its assets were involved in any prohibited transaction with a party-in-interest. *See Blaw Knox*, 998 F.2d at 1191 (upholding dismissal of a prohibited transaction claim that "did not involve the investment or management of plan assets," but rather, "there was a change in sponsors of the plans while the plans' assets remained unaffected"). In fact, in several places, the FAC suggests the challenged transactions involve Historical DuPont's corporate assets, instead of Plan assets. Accordingly, plaintiffs' prohibited transaction claim is dismissed.

### E. Count VII (Co-Fiduciary Liability, 29 U.S.C. § 1105)

Finally, defendants seek dismissal of plaintiffs' co-fiduciary liability claim on the grounds that the FAC does not adequately allege any fiduciary duty breach and includes only conclusory allegations regarding each defendants' co-fiduciary liability. As explained in Section III(A)(1), the Court agrees that plaintiffs fail to state a claim for fiduciary breach under ERISA. As such, plaintiffs' claim for co-fiduciary liability under ERISA is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion to dismiss. Because amendment would not be futile, however, the Court grants plaintiffs **LEAVE TO AMEND** as to all claims. Any second amended complaint must be filed within **twenty-eight (28) days** of issuance of this Order. No new claims or parties may be added without leave of court or stipulation of the defendants. Plaintiffs shall also provide the Court with an electronic courtesy copy of a redline comparing the first and second amended complaints. Any response to the second amended complaint is due **fourteen (14) days** after plaintiffs' filing. Defendants may not bring any new arguments that could have been raised in this motion.

This Order terminates Docket Number 48.

**IT IS SO ORDERED.**

Dated: April 27, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**