# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KRISHNAN R THONDUKOLAM, ET AL.,**<br>Plaintiffs,<br>vs.<br>**CORTEVA, INC., ET AL.,**<br>Defendants. | CASE NO. 19-cv-03857-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**<br>Re: Dkt. No. 65 |

This is the second round of briefing on the complaint filed by plaintiffs Krishnan R. Thondukolam, Stephen W. Records, William C. Mallonee, and David L. Everett against defendants Corteva, Inc. ("Corteva"); DowDuPont, Inc.; DuPont de Nemours, Inc. ("New DuPont"); E.I. du Pont de Nemours and Company ("Historical DuPont"); the Pension and Retirement Plan; and the Administrative Committee.

By way of background, in its prior order, the Court granted with leave to amend defendants' motion to dismiss the seven causes of action in the first amended complaint. In dismissing plaintiffs' claim for breach of fiduciary duty under 29 U.S.C. section 1104, the Court held that insofar as plaintiffs' claim arose out of defendants' decision to restructure, the claim failed under *Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009). The Court further held that while implementation of a spinoff may implicate fiduciary duties under *Paulsen*, plaintiffs did not allege sufficient facts to state a plausible claim based on this theory. Specifically, plaintiffs challenged "changes made to Historical DuPont's operations and controlled group *as part of* the restructuring," which were corporate business decisions, not fiduciary ones. Additionally, plaintiffs' allegations that the post-spinoff entities would not fulfill Plan obligations were conclusory and speculative.

Thereafter, plaintiffs filed a narrower, second amended complaint ("SAC") asserting a single claim for breach of fiduciary duty. Defendants now seek dismissal of the claim for the

same reason as in the prior round of briefing, that is, because the spinoff was a corporate business decision that did not implicate fiduciary duties. Plaintiffs counter that the SAC is distinguishable from the prior complaint, and succeeds in stating a claim for relief, on three main grounds: (1) it challenges implementation of the spinoff, rather than the spinoff itself; (2) it alleges that the spinoff improperly transferred the Plan from its original company to a newly formed shell corporation; and (3) it alleges that defendants failed to terminate the plan in the manner required by statute. The Court addresses each.

1. With respect to the argument that the SAC challenges the implementation of the spinoff rather than the decision to spin off, plaintiffs focus on allegations that the spinoff separated Plan participants from the company where they were employed while accruing benefits and placed them in a shell subsidiary of a newly formed company, Corteva. The SAC also identifies changes made to the post-spinoff entities' business operations, corporate names, headquarters and telephone numbers, branding and trademarks, stock ticker symbols, senior executives and directors, and number of employees, which plaintiffs claim show that New DuPont is the actual reincarnation of Historical DuPont. The Court recognizes that the distinction between non-fiduciary corporate business decisions and implementation of a spinoff that implicates fiduciary duties is not always clearly delineated, and neither party identifies case law precisely on point. However, the Ninth Circuit's decision in *Paulsen* and the Third Circuit's decision in *Blaw Knox Ret. Income Plan v. White Consol. Indus., Inc.*, 998 F.2d 1185 (3d Cir. 1993) offer meaningful guidance. In *Paulsen*, the court affirmed dismissal of a claim that an employer breached a fiduciary duty in deciding to spin off a business division and pension plan to another plan that was "inadequate[ly] fund[ed]" and whose sponsor was unable "to survive as an independent corporation," because "a decision to spin a plan off . . . is not a fiduciary act." 559 F.3d at 1069. Similarly, in *Blaw Knox*, plaintiff alleged that defendant transferred business divisions and pension plans to a newly formed entity to avoid liability for the plans' unfunded benefits. 998 F.2d at 1187-88. The Third Circuit held that "in selling the unprofitable [] [d]ivisions and structuring the transaction to include the existing pension plans, [defendant's] corporate directors were making a corporate business decision," and consequently, defendant "was acting in its

corporate management role, and not in its role as plan administrator[.]" *Id*. at 1189; *see also Foss v. Lucent Techs. Inc.*, No. CIV.A. 03CV5017(DMC), 2006 WL 3437586, at *4 (D.N.J. Nov. 27, 2006), *aff'd sub nom. In re Lucent Death Benefits ERISA Litig.*, 541 F.3d 250 (3d Cir. 2008) ("Therefore, AT & T's decision to spin-off Lucent and transfer its pension funds and obligations under the plan to Lucent was . . . strictly a business decision and not a decision made by AT & T in its fiduciary capacity."). These cases support a finding that even accepting plaintiffs' factual allegations as true, defendants' actions in this case—specifically, placing the Plan with a Corteva subsidiary while placing core business operations and employees with New DuPont—were non-fiduciary in nature.

Plaintiffs attempt to distinguish *Paulsen* and *Blaw Knox* on the ground that in those cases, plans were transferred along with associated businesses and employee-participants, which plaintiffs allege did not occur here. The Court is not persuaded, however, that this fact was dispositive in *Paulsen* or *Blaw Knox*. In both cases, the business operations that supposedly were meant to support the plans were ill-equipped to do so: in *Paulsen*, the plan was placed with a newly formed entity that subsequently filed for bankruptcy and distress terminated the plan, 559 F.3d at 1066, and in *Blaw Knox*, the plan was transferred along with unprofitable business divisions, 998 F.2d at 1189. It makes no sense for purposes of determining fiduciary liability that there would be a material difference between, on the one hand, transferring a plan along with inadequate business operations, and on the other hand, separating a plan from core business operations.[1] Likewise, there is no indication in *Paulsen* or *Blaw Knox* that separating a plan from its employee-participants necessarily makes a corporate restructuring fiduciary. The Court also notes that according to the SAC, Corteva maintains 21,000 employees and potentially 977 actively employed Plan participants. While these numbers are lower than plaintiffs would prefer, they are not insignificant.[2]

---

[1] The Court notes that while the SAC alleges that core business operations were moved to New DuPont, with Corteva serving as a smaller agricultural company, there are no factual allegations in the complaint to suggest Corteva's business is not viable. Relatedly, there is no allegation in the SAC that any beneficiary has been deprived of any promised benefits.

[2] Plaintiffs also argue that *Paulsen* is distinguishable because there, an actuary certified

3

Additionally, in *Paulsen*, the Ninth Circuit noted that the remedy the plaintiffs sought—reinstatement into the pre-spin-off plan—made clear the decision challenged was the spin-off rather than its implementation. 559 F.3d at 1076. Here, as they did in the prior complaint, plaintiffs seek, among other things, "the return of the Plan assets and liabilities to the reincarnation of the company that created it, New DuPont." This is further evidence that plaintiffs are challenging corporate decision-making rather than fiduciary acts.

In reaching its decision, the Court is mindful of the importance of protecting employee pension benefit plans from employers using improper methods, including hiding behind corporate acts, to evade their obligations to these plans. In this case, however, plaintiffs have failed to plead a legally cognizable claim for breach of fiduciary duty based on implementation of the spinoff.

2.  Plaintiffs further argue that defendants improperly transferred the Plan to a shell corporation, which they only called a continuation of Historical DuPont, to avoid complying with ERISA's transfer requirements. Section 208 of ERISA, which governs the transfers of plan assets, provides that when a plan "transfer[s] its assets or liabilities [to] any other plan," the benefits available to plan participants "immediately after" the transfer must be equal to or greater than the benefits they would have received if the plan had been terminated immediately before the transaction. 29 U.S.C. § 1058. Thus, by its own terms, section 208 does not apply absent an alleged transfer to another pension plan.[3] Plaintiffs urge this Court to adopt a broader interpretation of the statute, whereby plaintiffs may pursue a transfer theory on the basis that New DuPont is the actual reincarnation of Historical DuPont, and therefore, the Plan improperly was transferred to a different company, Corteva. The Court cannot ignore the plain language of the statute, however, which requires transfer "[to] any *other* plan." The SAC alleges that the Plan retained its assets and participants after the spinoff.[4] Section 208 does not apply.

---

compliance with ERISA's transfer and merger requirements prior to the transfer. However, nothing in the court's opinion suggests that this factor was dispositive in deciding that the corporate restructuring was a fiduciary act.

[3] *Paulsen* and *Blaw Knox* involved transfers to new plans, and thus, their discussions of section 208 do not provide guidance here.

[4] The opposition further acknowledges that some "portions of the core of Historical DuPont [] remain[ed] with Corteva," including recently acquired agricultural holdings, the

4

3.        Additionally, plaintiffs contend that defendants breached their fiduciary duties by failing to terminate the Plan as required under section 4041 of ERISA. That provision specifies the permissible methods of making a final distribution of plan assets, including through the purchase of insurance or by otherwise fully paying all benefits. 29 U.S.C. § 1341(b). Plaintiffs assert that defendants have taken the "first step" in a "standard termination," or completed a "de facto termination," which requires notice, full funding, and payout of plan assets, none of which has occurred.

Plaintiffs' allegations, taken as true, do not state a cognizable claim that defendants effectively terminated the Plan. As an initial matter, the Court is skeptical that there can be a "de facto" or "constructive" termination where ERISA explicitly supplies the sole avenues for voluntary termination of a plan. *See Carter v. Pension Plan of A. Finkl & Sons Co. For Eligible Office Employees*, 654 F.3d 719, 726-27 (7th Cir. 2011) ("[A] plan's termination is not a trifling affair. This is a highly regulated area of the law, and there is a prescribed and comprehensive process that pension plans must follow when they terminate. . . . To be sure, the Plan went through the initial steps. . . . [But] the Plan did not come close to finishing the process the Act prescribes: the Plan never distributed its assets."). The SAC does not allege that the Plan has attempted any of the regulatory steps required under ERISA to terminate a plan.

Moreover, even if there was a legal basis for plaintiffs' "de facto" termination theory, the SAC is bare of allegations that Plan participants failed to receive benefits or received reduced benefits, that any Plan assets were removed or distributed from the Plan, or that any required annual funding contributions were missed. The SAC alleges that the Plan currently is maintained by Historical DuPont and its parent, Corteva. *See* SAC ¶ 8 (alleging that Corteva "is the entity with ultimate responsibility for the maintenance of the Plan . . . [and] 'will . . . make contributions to the Plan,' and be the 'future steward of the Plan'"); ¶ 89 (alleging that the Plan continued to hold 100% of its assets following the spinoff). There simply is no basis in the SAC for the Court to conclude that there was a "termination" in any conventional use of the term where the Plan

---

corporate name, and the corporate tax identification number.

continues to exist and for the time being has not abandoned its obligations. *See Beck v. PACE Int'l Union*, 551 U.S. 96, 106 (2007) (rejecting argument that ERISA permits merger as a method of termination in part because merger "represents a *continuation* rather than a *cessation* of the ERISA regime" (alterations in original)); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000) (where retirement plan was transferred as part of bankruptcy reorganization, but employees only were employed by a different entity, "the facts show[ed] that what happened was not a plan termination; it was a spin off to a new plan").[5]

As such, plaintiffs' termination theory fails to support a claim for breach of fiduciary duty.[6]

---

[5] Plaintiffs point out that section 4041(b)(5) refers to termination where "there is [a] transaction or series of transactions which result in a [plan sponsor] ceasing to be a member of a controlled group" and the plan sponsor "immediately before the transaction or series of transactions maintained a single employer plan which is a defined benefit plan which is fully funded." 29 U.S.C. § 1341(b)(5). To the extent plaintiffs suggest that change to a plan sponsor's controlled group necessarily triggers termination requirements, the Court disagrees with this reading of the statue. Section 4041(b)(5) sets out special rules for determining whether a plan is *eligible for termination* within two years of a transaction that changes the plan sponsor's controlled group. Further, ERISA and its implementing regulations include separate provisions regarding the impact of changes to a plan sponsor's controlled group. *See* 29 C.F.R. § 4043.29; 29 U.S.C. § 1369.

[6] In their briefing, plaintiffs also rely on various alternative theories to establish support for their claim. None of these theories persuade.
First, plaintiffs' briefing attempts to analogize the asserted claim to a contract claim. However, the SAC does not allege a contract theory of recovery, nor does it identify any specific Plan provision that was violated by the corporate restructuring. The Court noted this deficiency in its prior order where, in dismissing plaintiffs' claim for "Failure to Follow Plan Documents," the Court found plaintiffs did not "identify any portions of the Plan that were violated by defendants' implementation [of] the spin-offs or management of the Plan." Additionally, the Supreme Court has held that modification of a pension plan is a settlor, rather than fiduciary, function. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 883 (1996). The unilateral contract theory advanced in plaintiffs' cited cases do not support a breach of fiduciary duty claim either, as those cases hold only that a plan participant may pursue a contract-based theory where it alleges that a plan sponsor modified or violated a plan provision affecting vested participant benefits. *See Pratt v. Petroleum Prod. Mgmt. Inc. Emp. Sav. Plan & Tr.*, 920 F.2d 651, 660 (10th Cir. 1990) (defendants allegedly modified plan provision affecting how benefits were valued and applied it retroactively to vested benefits); *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287-88 (3d Cir. 1995) (defendants allegedly modified schedule for distributing vested assets to plan participants after terminating plan); *Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1493-94 (N.D. Cal. 1993) (defendants allegedly modified plan provision affecting how interest on accrued payments was calculated).
Second, plaintiffs attempt to rely on derivative liability doctrines such as alter ego, veil piercing, and successor liability to argue that New DuPont should be treated as the actual reincarnation of Historical DuPont. These doctrines, however, are used to determine whether one entity's liability should be imputed to another entity, not whether the first entity's corporate identity has been taken on by the other. Plaintiffs also do not identify on point authorities

\* \* \* \* \*

For the foregoing reasons, the Court hereby **GRANTS** defendants' motion to dismiss. Further, because plaintiffs have amended their complaint twice, and the Court finds further amendment of the sole fiduciary duty claim would be futile, the motion is dismissed **WITH PREJUDICE**. The Clerk is directed to close the case.

This Order terminates Docket Number 65.

**IT IS SO ORDERED.**

Dated: October 7, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

applying these doctrines in this context.